UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BRIAN M. HAMMOND,

                Plaintiff,

       -against-                                  **MEMORANDUM AND ORDER**

LINCOLN TECHNICAL INSTITUTE, INC.,            10-CV-1933 (JBW) (JMA)

                Defendant.
-----------------------------------------------------------------X

A P P E A R A N C E S:

Ilya Novofastovsky
Novo Law Firm
299 Broadway, 17th Floor
New York, NY 10007
    *Attorney for Plaintiff*

David S. Rutherford
Adam C. Guzik
Rutherford & Christie, LLP
369 Lexington Ave., 8th Floor
New York, NY 10017
    *Attorneys for Defendant*

**AZRACK, United States Magistrate Judge:**

On February 9, 2010, plaintiff Brian M. Hammond ("plaintiff") filed a summons and complaint in New York Supreme Court, alleging a cause of action in negligence arising out of injuries plaintiff sustained during a class at defendant Lincoln Technical Institute, Inc. ("defendant" or "Lincoln Tech"). Notice of Removal, ECF No. 1. Plaintiff alleged that he suffered injuries to his foot after a large metal part flew off of a machine in defendant's auto shop and struck him, and that the incident was caused by defendant's negligent maintenance and operation of the machinery, and negligent failure to adequately supervise the students in class.

Id. ¶¶ 12–20. On April 28, 2010, defendant removed the action to this Court. Id. The parties proceeded with discovery, as well as unsuccessful settlement discussions. See docket 10-CV-1933.

Defendant has moved for summary judgment under Federal Rule of Civil Procedure ("F.R.C.P.") 56, arguing that plaintiff is unable to establish the elements of negligence. Mem. of Law in Supp. Def. Mot. for Summ. J. ("Def. Mem."), ECF No. 30. In response, plaintiff argues that defendant failed to meet its burdens of production and persuasion demonstrating entitlement to summary judgment, that there are disputed questions of fact relating to defendant's negligence, and that plaintiff is entitled to an inference of negligence under the doctrine of *res ipsa loquitur*, thus satisfying the elements of his prima facie negligence case. Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp."), ECF No. 38. The parties have consented to my disposition of this motion. ECF No. 34.

For the following reasons, I conclude that: (1) plaintiff is not entitled to an inference of negligence under *res ipsa loquitur* because the machinery was not within defendant's exclusive control; and (2) plaintiff failed to put forth evidence establishing that defendant breached its duty to maintain the machinery or negligently failed to supervise plaintiff's class, and therefore plaintiff cannot establish a prima facie case of negligence. Accordingly, defendant's motion for summary judgment is granted.

## I. BACKGROUND

The facts below come from the parties' depositions, affidavits, and exhibits, as well as the parties' Rule 56.1 statements of fact. Most of the evidence comes from plaintiff's deposition testimony, Decl. in Supp. of Def. Mot. for Summ. J., Ex. E ("Hammond Dep."), the deposition testimony of Robert Paganini, the Director of Education for defendant, Decl. in Supp. of Def. Mot. for Summ. J., Ex. G ("Paganini Dep."), and the affidavit of Reyon S. Sylvester, a student in

plaintiff's class who witnessed the incident, Decl. in Opp. of Def. Mot. for Summ. J., Ex. A ("Sylvester Aff.").

## A. The Incident

Plaintiff is a twenty-two year old former student at Lincoln Tech. Pl.'s Local Rule 56.1 Stmt. of Facts ("Pl.'s 56.1") ¶ 6, ECF No. 32. Lincoln Tech is a technical school offering, among other programs, automotive repair certification training. Id. ¶ 8. Before studying at Lincoln Tech, plaintiff studied automotive repair at a technical high school and worked as an apprentice in Richie's Auto Clinic in Brooklyn, New York. Id. ¶ 7. After graduating from high school in 2009, plaintiff enrolled at Lincoln Tech. Hammond Dep. 32:22–33:03, 78:17–23.

On the date of the incident prompting this action, December 10, 2009, plaintiff was enrolled as a student at Lincoln Tech and attended a class on steering and suspension. Pl.'s 56.1 ¶ 12. The class took place in a shop area of the school that had numerous automotive bays for class instruction. Id. ¶¶ 12, 19. On the morning of the incident, there were three to four classes working in the shop area, Paganini Dep. 28:21–25, each with approximately twenty to thirty students, Hammond Dep. 46:25–47:24.

At approximately 10:00 or 11:00 am, plaintiff and other students performed an inspection that had been previously demonstrated in class.[1] Hammond Dep. 12:03–04; Sylvester Aff.; Pl.'s 56.1 ¶¶ 18, 13. Plaintiff and several other students were standing underneath a car raised on a

---

[1] Plaintiff objects to defendant's reliance on portions of Paganini's testimony regarding the circumstances of the incident, specifically: (1) that the instructor told Paganini that he was not in the shop when the incident occurred, Paganini Dep. 26:14–24; (2) that he had interviewed students in plaintiff's class who reported that students, including plaintiff, were engaging in horseplay when the incident occurred, id. at 30:14–15; and (3) that he heard, though another school staff member, that the manufacturer inspected the machine after the incident and concluded that the machine malfunctioned due to misuse, id. at 19:16–10:14. Pl.'s Reply at 6. Plaintiff is correct that only admissible evidence may be considered for purposes of ruling on a motion for summary judgment. Raskin v. Wyatt, 125 F.3d 55, 66 (2d Cir. 1997); see also F.R.C.P. 56(c)(4). All of the evidence plaintiff objects to is inadmissible hearsay, and must not be considered for summary judgment, although some of the evidence plaintiff objects to actually helps his case. The consideration of this evidence is irrelevant, however, because, even if that evidence is considered, plaintiff fails to establish the elements necessary for a prima facie case of negligence.

3

drive-on ramp approximately six or seven feet off the ground, inspecting the front suspension of the car. Hammond Dep. 13:10–14:04, 67:15, 69:10–15. The instructor's assignment required use of a jack in the front of the car,[2] which lifted the car an additional foot or so. Id. at 69:16–22.

Plaintiff showed the other students how to raise the front jack, then examined the front suspension of the car. Id. 70:16–71:9. Plaintiff testified that he did not think that other students touched the machine while he did this, but that it is possible that someone "pressed the button [on the machine] and turned around really fast." Id. at 119:01–05. While standing under the car facing the front tires, plaintiff heard a hissing sound from the rear of the car and instinctively turned toward the noise. Pl.'s 56.1 ¶ 14. Plaintiff saw a portion of the rear jack fly out and strike another student in the chest, then land on plaintiff's foot. Id. ¶ 16. Sylvester, another student in plaintiff's class, affirmed that he "heard a hissing noise coming from a hydraulic lift where [plaintiff] was working along with another student . . . then saw the hydraulic lift malfunction and a metal piece of the lift [fly] off." Sylvester Aff.

Plaintiff then fell to the ground and was assisted by classmates before being transported in an ambulance to a nearby hospital. Pl.'s 56.1 ¶ 17; Hammond Dep. 83:10–84:09. Although the first doctor to examine him diagnosed only a sprain, plaintiff was eventually diagnosed with fractures in his foot and ankle. Id. at 84:7–85:12; 90:10–91:13. He wore a hard cast for five months. Id. Plaintiff seeks monetary relief for the injuries he sustained as a result this accident. Pl.'s 56.1 ¶ 2.

---

[2] In plaintiff's 56.1 statement, he disputes defendant's statement that "operation of only the front jack, and not the rear jack, was required for the instructor's assignment," and asserts that there has been no offer of proof as to what was required for the instructor's assignment. At his deposition, however, plaintiff testified that the instructor had not asked them to do anything with the rear of the vehicle. Hammond Dep. 61:10–12. Moreover, it is undisputed that the car was on a rear jack at the time of the incident. Pl.'s 56.1 ¶ 13, 20.

## B. Defendant's Shop and Machinery

The parties agree that the lift and jack in question were owned, possessed, and maintained by defendant.[3] Pl.'s 56.1 ¶ 31(a). In addition, Hunter, the company that manufactured the lift and jack, maintained a schedule for routine service and repair, and if a problem arose with the machinery, it could be sent to Hunter for repair. Paganini Dep. 15:18–16:22, 18:02–07. After the incident, the lift was taken out of service, Hammond Dep. 50:2–5, and the jack was removed, Paganini Dep. 22:25–23:18. To the best of Paganini's knowledge, the jack was discarded. Id. at 24:17–20. The lift, without the jack, was placed back in service, but removed for scheduled replacement about a year after the incident. Id. at 22:13–19, 23:12–13.

Although the incident occurred during plaintiff's first time using this particular equipment, he had been given instructions on how to use the lift and jacks in previous classes. Hammond Dep. 21:22–22:07. In addition, plaintiff's curriculum at Lincoln Tech included classroom instruction on how to use the lifts and jacks, and on shop safety. Id. at 34:04–34:03, 35:08–36:06.

The parties dispute whether the instructor for plaintiff's class was in the shop at the time of the accident.[4] Sylvester stated that at the time of the incident, the instructor was in the hallway. Sylvester Aff. Plaintiff testified at deposition that his instructor was assisting students in a neighboring bay at the time of the incident. Hammond Dep. 23:5–15. Plaintiff then submitted an affidavit with his opposition for summary judgment, which states that "at the time

---

[3] Paganini testified that, under Lincoln Tech's maintenance policy, the foreman walked the shop every Friday afternoon and pressurized the compressors in the machines, and if the foreman heard hissing, the policy was to take the machinery out of service. Id. 58:14–59:02. Plaintiff denies knowledge sufficient to verify these statements, and "notes that the allegation is speculative and cannot be inferred without first hand account." Pl.'s 56.1 ¶ 30. Whether or not this evidence is considered makes no difference for summary judgment because, as discussed infra, there is no evidence that a reasonable inspection would have revealed any defect in the machinery that may have caused this incident.

[4] Plaintiff does not appear to object to the inclusion of Paganini's testimony that, at the time of the incident, the shop foreman was in a separate room within the shop with the windows closed, Paganini Dep. 30:18–24, even though this testimony is based on hearsay, rather than Paganini's personal knowledge.

of the incident, the class instructor was in a hallway that leads to the shop area." Pl.'s Aff. in Opp. to Summ. J. ¶ 7, ECF No. 37.

## II. STANDARD OF REVIEW

According to F.R.C.P. 56(a), a court "shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing the absence of any genuine issue of material fact. Id. at 256. In order to rebut this showing and survive the motion for summary judgment, the nonmoving party "need only present evidence from which a jury might return a verdict in his favor." Id. at 257.

According to the Supreme Court, the language of F.R.C.P. 56 mandates the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, the complete failure of proof regarding an essential element to the nonmoving party's case "necessarily renders all other facts immaterial," and thus there is no genuine issue as to any material fact. Id. at 323. A court evaluating the support for a summary judgment motion should construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. Huminski v. Corsones, 396 F.3d 53, 69–70 (2d Cir. 2005).

## III. DISCUSSION

Plaintiff has put forth several theories of defendant's negligence: (1) that, under the doctrine of *res ipsa loquitur*, the circumstances indicate negligence that cannot be precisely explained, but can only be attributed to defendant, Pl.'s Reply at 9; (2) that the jack malfunctioned because defendant breached its duty to properly maintain the machine, Pl.'s Reply at 6; and (3) that defendant breached its duty to properly supervise the students in their operation of the machinery, Pl.'s Reply at 9.

Defendant moves for summary judgment on the grounds that plaintiff has failed to establish the elements of a prima facie case of negligence because he has failed to establish that defendant breached any duty owed to plaintiff. Def.'s Mem. at 5. Rather than coming forward with facts to show that he could establish a prima facie case of negligence, or even asking for more discovery to be able to make such a case,[5] plaintiff asserts that defendant has failed to prove the cause of the accident, or "provide direct evidence . . . that would prove no genuine issue of fact exists." Pl.'s Opp. at 5. Plaintiff asserts that defendant cannot meet its burden to establish that it is entitled to summary judgment and that no trial is necessary. Pl.'s Opp. at 4 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157–61 (1970)).

Plaintiff's opposition papers indicate a lack of understanding that defendant need not prove the negative of plaintiff's allegations, but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (in a motion for summary judgment, "[t]he movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is

---

[5] According to F.R.C.P. 56(d), a nonmovant may, in an affidavit or declaration, show that it cannot present facts essential to justify its opposition, and the court can allow additional time for discovery.

not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."). For the reasons discussed below, plaintiff has not produced evidence sufficient to make a prima facie case of negligence.

## A. Res Ipsa Loquitur

Plaintiff attempts to defeat summary judgment by arguing that he is entitled to an inference of defendant's negligence under the doctrine of *res ipsa loquitur*.[6] Pl.'s Mem. at 9. Application of this doctrine under New York state law[7] would create a prima facie case of negligence sufficient for submission to a jury. Dermatossian v. New York City Transit Auth., 67 N.Y.2d 219, 226 (1986). In order for a case to be submitted to a jury with an inference of negligence under *res ipsa loquitur*, plaintiff must establish three elements: (1) the event must be of a kind that ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. St. Paul Fire & Marine Ins. Co. v. City of New York, 907 F.2d 299, 302 (2d Cir. 1990).

Defendant argues that plaintiff cannot establish the second element, that of defendant's exclusive control. Def.'s Reply at 6. The purpose of the exclusive control element "is to eliminate within reason the possibility that the event was caused by someone other than

---

[6] Plaintiff argues, without citing any authority, that defendant discarded the jack before anyone could examine it, and because "[n]o one will ever be able to determine why the equipment in question failed," he is entitled to a *res ipsa loquitur* inference. Pl.'s Reply at 11. However, the alleged spoliation of evidence is not an element in a *res ipsa loquitur* analysis, and plaintiff has not made a motion for sanctions based on spoliation of evidence. Cf. Rivera v. National Passenger Railroad Service, 442 F.Supp.2d 164, 168–170 (S.D.N.Y. 2006) (considering plaintiff's contention that an adverse inference must be drawn against defendant as an issue separate from plaintiff's *res ipsa loquitur* argument).

[7] Although this incident occurred in New Jersey, both parties in this diversity action relied on New York law in their summary judgment papers, and neither party has contested the application of New York law. Therefore, the controlling law for this case is New York law. See Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995) ("Because both parties agree that New York cases are controlling, we shall assume that New York law governs this diversity action."); Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 206 n.1 (2d Cir. 1984) ("Following New York's choice of law principles, we apply New York law to this case . . . because the parties have conducted the entire litigation on the assumption that New York law governs.").

defendant." St. Paul Fire & Marine Ins. Co., 907 F.2d at 302. In order to establish this element, plaintiff must show that the greatest probability of fault "lies at the defendant's door." Dermatossian, 67 N.Y.2d at 227. This does not require the elimination of all other possible causes for the injury, but requires a "rational basis for concluding that 'it is more likely than not' that the injury was caused by defendant's negligence." Kambat v. St. Francis Hosp., 89 N.Y.2d 489, 494 (1997) (quoting Restatement [Second] of Torts, § 238D, comment e).

Here, plaintiff cannot show that the machinery was within defendant's exclusive control. The jack and lift in question had levers, buttons, locks, and different positions for different uses. Hammond Dep. 29:06–25, 121:7–14. The machinery in the shop was used each week by several classes, each with twenty to thirty people. Id. at 47:11–13. Each class was in the shop once or twice a week, on a rotating schedule. Id. at 42:3–24. Because the machinery was, for its very purpose, subject to manipulation by numerous other students, it cannot be said that the machinery was within defendant's exclusive control.[8] See Dermattossian, 67 N.Y.2d at 228 (the fact that a grab handle on a city bus was continuously available for use by defendant's passengers indicated that defendant was not in exclusive control of the handle); Chini v. Wendcentral Corp., Inc., 692 N.Y.S.2d 533, 533 (4th Dep't 1999) (the fact that defendant restaurant's customers had continuous access to a chair in the restaurant meant that defendant did not have exclusive control of the chair).

Plaintiff has not shown that it is more likely than not that the injury was caused by defendant's negligence because other students had access to the jack and lift, both in the minutes leading up to the incident, and in the days prior. See Velez v. Sebco Laundry Sys., 178 F. Supp.

---

[8] Plaintiff argues that defendant had a policy of disciplining students who touched or operated the equipment without express permission, and therefore the equipment was in defendant's exclusive control. Pl.'s Reply at 11. This argument fails to establish exclusive control. The fact that students needed permission to touch or operate the equipment does not mean that students did not, with permission, regularly touch and operate the equipment.

9

2d 336 (S.D.N.Y. 2001) (concluding that the exclusive control element was not met because plaintiff and other building tenants had access to the apartment building dryer that caused plaintiff's injuries). Thus, because plaintiff cannot establish the element of defendant's exclusive control, he is not entitled to an inference of negligence under *res ipsa loquitur*.

**B. Prima Facie Claim of Negligence**

*1. Failure to Warn Of or Remedy Dangerous Defect*

Under New York law, an owner or operator is liable for injuries due to a dangerous defect in the equipment he maintains if plaintiff can show that defendant had a duty to maintain the equipment, and had actual or constructive notice of the defect. Velez, 178 F. Supp. 2d at 340–341 (citing Rogers v. Dorchester Assoc., 32 N.Y.2d 553, 557–559 (1973)). It is undisputed that defendant had a duty to maintain the machinery in the shop. Defendant argues that defendant breached no duty to warn plaintiff of or remedy the alleged dangerous condition caused by the machinery because it had no notice of a dangerous condition. Def.'s Memo at 5.

"Actual or constructive notice means that the defendant knew or should have known about the defect." Velez, 178 F. Supp. 2d at 341. Constructive notice means that "a dangerous condition 'must be visible and apparent and it must exist for a sufficient amount of time prior to the accident to permit the defendant's employees to discover and remedy it.'" Flowers v. Delta Airlines, Inc., No. 00-CV-783, 2001 WL 1590511, *8 (E.D.N.Y. Nov. 7, 2001) (citations omitted).

In Velez, plaintiff failed to establish that defendant had notice of a defect because she failed to present evidence that a reasonable inspection could have revealed the defect, and failed to present evidence that the machine's age made malfunction foreseeable. Velez, 178 F. Supp. 2d at 341. The court found that plaintiff's allegations of notice, without factual support, were not sufficient. Id.

Plaintiff's papers do not specifically address the issue of notice.[9] According to plaintiff's testimony, everything in the shop appeared to be in working order. Hammond Dep. 50:13–14. His testimony that the lift was the only machine in the shop that did not look new is not, without any evidence on the safe lifespan of such machinery, enough to provide a reasonable basis for a jury to conclude that the jack or lift had a reasonably ascertainable defect.

Because of plaintiff's failure to come forward with any specific evidence that defendant had notice of a defect, plaintiff's claim of failure to warn of or remedy a dangerous defect is insufficient to make out a prima facie case of negligence. Velez, 178 F. Supp. 2d at 340–341 (concluding that, without any specific evidence to support an assertion that defendant had notice of a defect, plaintiff could not make out a prima facie case of negligence under New York law).

2. *Failure to Supervise*

As a general matter, a defendant has no legal duty to control the conduct of third persons so as to prevent them from harming others. Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010) (citations omitted). In New York, schools are under a special duty of *in loco parentis*, meaning that they must "adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." Mirand v. City of New York, 84 N.Y.2d 44, 49 (2d Dep't 2011). This special duty "derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians." Id.

Plaintiff argues that this duty applies to defendant, and that the instructor's absence from the classroom at the time of the incident establishes a breach of this duty. Pl.'s Mem. at 7. However, the cases plaintiff relies on all involve students at elementary or high schools. See

---

[9] At his deposition, plaintiff testified that Eric Wisdom, another student, had told him that he had reported to the instructor that the lift in question was "acting up." See Hammond Dep. 154:03–155:15. Plaintiff not only failed to provide Wisdom's testimony, but never even cited to Hammond's hearsay testimony about Wisdom's statement.

11

Mirand v. City of New York, 84 N.Y.2d 44 (1994) (students at a high school); Nash v. Port Wash. Union Free Sch. Dist., 922 N.Y.S.2d 408 (2d Dep't 2011) (students at a high school); Bloomfield v. Jericho Union Free Sch. Dist., N.Y.S.2d 294 (2d Dep't 2011) (not indicating the type of school, but explaining that the plaintiff was in gym class and was an infant); Tanenbaum v. Minnesauke Elementary Sch., 901 N.Y.S.2d 102 (2d Dep't 2010) (students at a middle school). New York courts have rejected the duty to of *in loco parentis* at the college level. Eiseman v. State of New York, 70 N.Y.2d 175, 190 (1978); Guest, 603 F.3d at 20. See also Ellis v. Mildred Elley Sch., 667 N.Y.S.2d 86, 86 (3d Dep't 1997); Talbot v. New York Inst. of Tech., 639 N.Y.S.2d 135, 135 (2d Dep't 1996). Indeed, colleges "have no legal duty to shield their students from the dangerous activity of other students." Eiseman, 70 N.Y.2d at 190. Their only duty is as property owners to "exercise reasonable care for the protection of persons lawfully on the premises from reasonably foreseeable criminal or dangerous acts of third persons," meaning that a property owner must have actual or constructive notice of the likelihood of the dangerous conduct. Ellis, 245 A.D.2d at 996.

New York courts have applied the same principles to non-degree-granting technical schools, finding that they are the "functional equivalent of [ ] college[s]," and that the special duty of *in loco parentis* does not apply. Id. at 995 (a non-degree granting business school where the students were the age and maturity of college students was the "functional equivalent of a college" for the purposes of declining to impose a duty of *in loco parentis*). Lincoln Tech is a technical school where the students are the same age and maturity as those at colleges. See Hammond Dep. 78:19–23 (explaining that he graduated high school before attending Lincoln Tech). Plaintiff was there to prepare for technical certification, not fulfill public schooling

12

requirements. Id. at 137:17–138:18. Therefore, defendant has no duty of *in loco parentis* under New York law.

Plaintiff argues that there are "factual disputes" about whether plaintiff's instructor was in the shop, whether the class was on break, and whether the shop foreman was watching the class. Pl.'s Opp. at 7–9. However, none of these disputed facts are material because, without a duty of *in loco parentis*, defendant had no duty to protect plaintiff from the unforeseeable actions of third persons.[10] See Guest, 603 F.3d at 21 (citing D'Amico v. Christie, 71 N.Y.2d 76, 88 (1987)).

Insofar as defendant had a duty to protect plaintiff from the foreseeable actions of the other students, plaintiff has not put forth any evidence as to what exactly defendant was supposed to foresee. In other words, plaintiff's lack of evidence on causation makes it impossible for him to prove defendant's negligence, because plaintiff has failed to establish what it is that defendant was supposed to have done differently to prevent this accident.

As plaintiff rightly points out, Paganini's statements from student interviews and conversation with the maintenance representative who examined the lift after the incident are inadmissible hearsay. See supra n.2. Plaintiff's best evidence of what happened is: (1) two eyewitness accounts (plaintiff's and Sylvester's) that the part flew off without any ascertainable cause; (2) plaintiff's belief that the jack's proportioning valve malfunctioned; and (3) testimony that neither the instructor nor the shop foreman were supervising plaintiff's class at the time of the incident. This evidence does not establish that, but for some act or omission on defendant's part, the accident would not have happened. See Ascher v. Target, 522 F. Supp. 2d 452, 456–

---

[10] Even without a duty of *in loco parentis*, the duty of care owed by a property owner to a guest can include a duty to supervise and control guests if the property owner has the opportunity to control the third party and is reasonably aware of the necessity of such control. See Mazurkiewicz v. Queen of Heart Cruises, Inc., No. 04-CV-4630, *1 (Dec. 28, 2007, E.D.N.Y.) (citing Paul v. Hogan, 392 N.Y.S.2d 766, 768 (4th Dep't 1977)). However, plaintiff fails to acknowledge any duty other than that of *in loco parentis*, and fails to point to any evidence relating to whether defendant was aware of a need to control the conduct of the students with permission to use the machines.

457 (E.D.N.Y. 2007) (explaining that "mere speculation as to the cause of injury is insufficient" and finding that plaintiff had not identified the cause of the accident, nor excluded explanations other than defendant's negligence).

The fact that the students in plaintiff's class were working with large machinery does not, without any specific evidence as to what actually caused the injuries in this case, suffice to show that defendants had some duty to prevent whatever caused plaintiff's injury. Even if there was student horseplay or improper use, plaintiff has not come forward with admissible evidence establishing that the horseplay or improper use actually caused the jack to fly off the lift.

Accordingly, because plaintiff has failed to establish that defendant breached its duty owed to plaintiff, and failed to put forth evidence that any such breach was the cause of plaintiff's injuries, I conclude that plaintiff has failed to establish a prima facie case of negligence.

## IV. CONCLUSION

In summary, I conclude that: (1) plaintiff is not entitled to an inference of negligence under *res ipsa loquitur* because the machinery was not within defendant's exclusive control; and (2) plaintiff failed to put forth evidence establishing that defendant breached its duty to maintain the machinery or negligently failed to supervise plaintiff's class, and therefore plaintiff cannot establish a prima facie case of negligence. Accordingly, defendant's motion for summary judgment is granted, and the Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: January 30, 2012
      Brooklyn, New York

                                                  /s/
                                        JOAN M. AZRACK
                                        UNITED STATES MAGISTRATE JUDGE